BROWN WHITE & OSBORN LLP
THOMAS M. BROWN (Bar No. 117449)
tbrown@brownwhitelaw.com
KENNETH P. WHITE (Bar No. 173993)
kwhite@brownwhitelaw.com
KARINEH TARBINIAN (Bar No. 281275)
ktarbinian@brownwhitelaw.com
333 South Hope Street, 40th Floor
Los Angeles, California 90071-1406
Telephone:  213. 613.0500
Facsimile:  213.613.0550

Attorneys for LAWRENCE A. MAY, M.D.,
individually and on behalf of all others
similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

LAWRENCE A. MAY, M.D.,
individually and on behalf of all others
similarly situated,

            Plaintiff,

            v.

DANIEL S. GLADSTONE, an individual,
LONGEVITI HEALTH, LLC a Florida
limited liability company, and DOES 1 -
10, inclusive,

            Defendants

Case No.:  2:21-cv-02312

**CLASS ACTION COMPLAINT FOR:**

(1) **Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227**

(2) **Violations of California Business and Professions Code § 17200, et seq., for TCPA Violations**

(3) **Violations of California Business and Professions Code § 17200, et seq., for Violations of CAN-SPAM Act**

(4) **Violations of California Business and Professions Code § 17200, et seq., for Violations of California Public Utilities Code § 2872**

**[DEMAND FOR JURY TRIAL]
CLAIM FOR INJUNCTIVE RELIEF**

1

CLASS ACTION COMPLAINT

1    Plaintiff Lawrence A. May, M.D. ("Plaintiff") brings this Class Action Complaint
2    and Demand for Jury Trial against Defendants Daniel S. Gladstone ("Gladstone") and
3    Longeviti Health, LLC ("Longeviti" and collectively with Gladstone, "Defendants") to
4    stop their practice of making unsolicited, pre-recorded calls to the private numbers of
5    physicians nationwide, and to obtain redress for all persons injured by their conduct.
6    Plaintiff, individually and on behalf of all others similarly situated, complains and
7    alleges as follows based on personal knowledge as to himself, on the investigation of
8    his counsel, and on information and belief as to all other matters:

9                              **NATURE OF THE ACTION**

10           1.     This class action lawsuit arises because Defendants violated the Telephone
11    Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and California's unfair
12    competition laws by making hundreds of unwanted robo-calls and pre-recorded calls
13    and sending hundreds of electronic mail messages ("emails"), to the cell phones and
14    personal email addresses of dozens of medical doctors throughout the nation, including
15    in Los Angeles, California — all without the prior express consent of those receiving
16    Defendants' calls and emails.

17           2.     Gladstone stole these physicians' contact information from Longeviti's
18    competitor, SignatureMD, and targeted them with unwanted calls and emails as part of
19    Defendants' advertising campaign to attract the business of "concierge physicians"
20    away from SignatureMD and to Longeviti's concierge services.

21           3.     Congress enacted the TCPA to protect consumers from unauthorized calls
22    exactly like those alleged in this Complaint—autodialed or prerecorded solicitations to
23    cellular phone numbers, placed without each consumer's prior express consent.

24           4.     Defendants' violations caused Plaintiff and the members of the putative
25    class to experience actual harm, including the aggravation, nuisance, and invasion of
26    privacy that necessarily accompanies the receipt of unsolicited phone calls to one's
27    cellular phone.

28

5.      In response to Defendants' unlawful conduct, Plaintiff filed the instant lawsuit, seeking an injunction requiring Defendants to cease all unsolicited calls, preventing similar conduct by Defendants in the future, as well as an award of statutory damages to the members of the putative class under the TCPA, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

6.      The claims alleged are asserted pursuant to the TCPA, 47 U.S.C. § 227. This matter is within the Court's jurisdiction under 28 U.S.C. § 1331.

7.      Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because all or a part of the events giving rise to the causes of action asserted by Plaintiff took place in this district, and because Plaintiff Lawrence A. May, M.D. resides in the Central District of California.

## PARTIES

8.      Plaintiff LAWRENCE A. MAY, M.D. is an individual citizen of the State of California and a medical doctor who resides within the city limits of Los Angeles, California.

9.      Defendant DANIEL S. GLADSTONE is a resident of the State of Florida.

10.      Defendant LONGEVITI HEALTH, LLC is a limited liability company that is organized under the laws of the State of Florida and is conducting business throughout the United States, including Los Angeles, California.

11.      Plaintiff is informed and believes and thereon alleges that actions or failures to act, taken by and through Longeviti's designated employees and agents, were committed within the purpose and scope of their employment or relationship with Longeviti and in their official capacity as employees of Longeviti and that Longeviti is legally responsible for all such acts or omissions.

12.      Plaintiff does not know the true names and capacities of DOES 1 through 10, inclusive, and thus sues said Defendants by fictitious names.  Plaintiff will identify the true names and capacities of DOES 1 through 10, inclusive, if and when they are

ascertained.  Plaintiff is informed, believes, and thereon alleges that each of the fictitiously named Defendants is in some manner legally responsible for the occurrences alleged herein.

13.   Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, at all times herein mentioned, were the agents, employees, servants, and/or co-conspirators of the remaining Defendants.  Plaintiff is further informed, believes, and thereon alleges that Defendants, and each of them, were the actual and/or ostensible agents of the remaining Defendants and were acting within the course and scope of said agency.

## COMMON FACTUAL ALLEGATIONS

14.   Between late 2010 and May 31, 2014, Gladstone worked in sales operations and physician acquisition and development for SignatureMD, a provider of membership-based concierge medicine support services to concierge physicians.

15.   Plaintiff is a medical doctor practicing internal medicine, with a concierge medicine practice he operates through SignatureMD's concierge support services. Concierge doctors provide the same care as primary care physicians but with a personalized type of care delivery model.  Concierge medicine usually involves round-the-clock physician access and highly personalized, comprehensive care.  SignatureMD connects patient members with physicians in their service, including Plaintiff.

16.   At all relevant times, SignatureMD maintained a confidential list of potential and existing physician clients in its customer relationship management system ("Physician List").  During his work at SignatureMD, Gladstone had access to SignatureMD's Physician List, which contained physicians' private contact information, personal cellular phone numbers, and personal email addresses. SignatureMD collected this information as it engaged with physicians, both as existing and potential clients, regarding its concierge support services.

17.     On May 31, 2014, Gladstone resigned from his employment at SignatureMD.  Upon information and belief, before leaving SignatureMD, Gladstone unlawfully retained a copy of SignatureMD's Physician List without its authorization.

18.     Upon information and belief, after leaving SignatureMD, Gladstone, either by himself or through third-parties, gained unauthorized access to SignatureMD's client relationship management system and once again obtain private contact information of additional physicians.  Plaintiff alleges this based in part on the fact that Gladstone was able to contact SignatureMD physicians who joined SignatureMD after he left the company, and based on his prior misappropriation of information.

19.     On December 15, 2017, Gladstone filed for Chapter 7 bankruptcy in Florida.  Just eleven days later, on December 26, 2017, Gladstone registered his company, Longeviti, in the state of Florida.  Longeviti provides almost identical services to SignatureMD and markets itself as a "concierge medicine and practice solutions company."

20.     At no point has Plaintiff, and others similarly situated, provided Defendants with their cell phone number or personal email address, nor has he (or others) authorized or consented to Defendants contacting him through his cell phone or email address.  Upon information and belief, Defendants used SignatureMD's Physician List, which they acquired by illicit and unauthorized means, to make unsolicited, pre-recorded calls to the physicians on the Physician List, including Plaintiff, in order to advertise Longeviti's services.

21.     The TCPA makes it "unlawful for any person within the United States … to make any call … using any automatic telephone dialing system or an artificial or prerecorded voice" to any telephone number assigned to a cellular telephone service unless in an emergency or with consent of the recipient of the call.  47 U.S.C. § 227(b)(1)(A)(iii).  Thus, the TCPA exists to prevent communications like the ones described within this complaint and to protect the privacy of citizens like the Plaintiff and those similarly situated.  In fact, "the TCPA prohibited almost all robocalls to cell

5

phones." *Barr v. American Association of Political Consultants, Inc*, 140 S. Ct. 2335 (2020).

22.     On or before December 24, 2020, Plaintiff received an unsolicited call on his personal cellular phone from the phone number 626-714-2186.  Plaintiff picked up the call, and subsequently heard a pre-recorded voice message identifying the caller as from Longeviti and advertising Longeviti's services.  The pre-recorded messaged further prompted Plaintiff to dial one on his phone if he wished to learn more about Longeviti.  Plaintiff did not dial any number, hung up, and never called back or requested to be called back.

23.     During the call, Plaintiff did not speak to a live person about Longeviti's services, and before receiving the call, Plaintiff had never called Longeviti regarding its services or requested to be called regarding Longeviti's services.

24.     Upon information and belief, Defendants used a calling service called Twilio Voip to make the unsolicited calls to Plaintiff and others similarly situated to Plaintiff.  Defendants' calls to Plaintiff were made using an artificial or prerecorded voice in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

25.     After calling Plaintiff using a prerecorded message, Defendants sent emails to Plaintiff's personal email address, stating "I recently called you and left you a message," followed by a commercial message advertising Longeviti's services.  A copy of one such email sent to Plaintiff is attached hereto as **Exhibit A**.

26.     Furthermore, given the multiple calls using artificial or pre-recorded voices to Plaintiff (and upon information and belief to those similarly situated to Plaintiff), and the fact that the calls came from a phone number connected to the calling service Twilio Voip, the calls are not part of a manually dialed advertising effort, but rather a robo-calling effort using auto-dial technology by Defendants, Twilio Voip, or other third parties working at Defendants' direction to advertise Longeviti's services.  The calls and voice messages received by Plaintiff were essentially identical to one another and,

upon information and belief, to calls and messages received by others similarly situated to Plaintiff.

27.     Defendants made calls via an ATDS or autodialer as 47 U.S.C. § 227(a)(1) (an "automatic telephone dialing system" is "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers") defines.  Upon information and belief, the ATDS Defendants used has the capability to both (1) store or produce telephone numbers to be called using a random or sequential number generator, and (2) automatically make a call from a list or database of telephone numbers, without human intervention.

28.     The calls from Defendants to Plaintiff were made without Plaintiff's prior express consent and without the Plaintiff's prior express written consent.  In fact, Defendants obtained Plaintiff's private cell phone number through Gladstone's misappropriation of SignatureMD's Physician List after his resignation from SignatureMD.

29.     The calls from Defendants to Plaintiff were not made for emergency purposes, in violation of 47 C.F.R. § 64.1200(a)(3)(i).

30.     The calls from Defendants to Plaintiff were made for commercial purposes, in violation of 47 C.F.R. § 64.1200(a)(3)(ii).

31.     The calls from Defendants to Plaintiff constituted advertising and/or telemarketing, in violation of 47 C.F.R. § 64.1200(a)(3)(iii).

32.     Plaintiff alleges that each call he received from Defendants violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action on behalf of himself and a class of all others similarly situated, defined as follows:

//

a.  All past, current, and potential physicians, domiciled within the United States, who received a nonemergency call from Defendants on their cellular telephone, without their prior express consent, either via an automatic telephone dialing system ("ATDS") or as a prerecorded message, and/or received an email to their private email address, that references and advertises Longeviti's concierge support services.

34.    Defendants and its employees or agents are excluded from the Class.

35.    **Numerosity:** Members of the Class are so numerous that joinder is impracticable. While the exact number of class members is unknown to the Plaintiff, it is believed that the Class is comprised of hundreds of members who are past, current, or potential users of SignatureMD's concierge support services and who provided SignatureMD with their private contact information, which was stolen and misappropriated by Defendants.  The Class members are disbursed throughout the United States. The Class is readily identifiable from information and records in the possession of Defendants and third parties.

36.    **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class. These questions predominate over questions that may affect only individual class members because Defendants have acted on grounds generally applicable to the Class. Such common and legal factual questions include:

a.    Whether the Defendants' conduct violates the TCPA;

b.    Whether the Defendant's calls were sent for an emergency purpose;

c.    Whether the Defendants obtained valid express consent from the call recipients;

d.    Whether Defendants adhered to Class member's requests to stop sending emails;

e.    Whether the Defendants keep records of email recipients who revoked consent to receive emails;

f.    Whether Plaintiff and members of the Class are entitled to damages, costs, or attorney's fees from Defendants;

8

CLASS ACTION COMPLAINT

g.    Whether Defendants violated the privacy rights of Plaintiff and members of the Class;

h.    Whether Defendants' conduct caused Plaintiff and members of the Class inconvenience or annoyance;

i.    Whether Plaintiff and members of the Class are entitled to compensatory damages;

j.    Whether Plaintiff and members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct; and

k.    Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendants from continuing to engage in its unlawful conduct.

37.    **Typicality:** Plaintiff's claims are typical of the members of the Class as all members of the Class are similarly affected by the Defendants' actionable conduct. Defendants' conduct that gave rise to the claims of Plaintiff and members of the Class (i.e., using an autodialer or a prerecorded message to make calls to cellular phones owned by Plaintiff and members of the Class) is the same for all members of the Class.

38.    **Adequate Representation:** Plaintiff will fairly and adequately protect the interests of the Class because Plaintiff has no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent. Specifically, the proposed Class includes physicians who provide concierge services through the same service or are potential future physician clients of SignatureMD. Furthermore, Plaintiff has retained competent and experienced counsel to represent him and the Class.

39.    **Superiority:** Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The

benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

40.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

41.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## **FIRST CLAIM FOR RELIEF**

### **(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227)**

### **(Against All Defendants)**

42.    Plaintiffs re-allege and incorporate by reference all paragraphs of this complaint as if fully set forth herein.

43.    The TCPA prohibits the use of an ATDS to make any call or prerecorded message to a wireless phone number without the prior express consent of the contacted party, or in the absence of an emergency.

44.    The acts and omissions of Defendant constitute numerous and multiple violations of the TCPA.

45.    As a result of Defendants' violations of 47 U.S.C. §§ 227 et seq., Plaintiff and members of the Class are entitled to an award of $500 in statutory damages for each and every negligent violation pursuant to 47 U.S.C. § 227(b)(3).

46.    As a result of Defendants' violations of 47 U.S.C. §§ 227 et seq., Plaintiff and members of the Class are entitled to an award of $10,000 in statutory damages for each and every knowing and/or willful violation pursuant to 47 U.S.C. § 227(b)(3).

47.    Should the Court determine that Defendants' conduct was willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), award treble damages to Plaintiff and the other members of the Class.

48.     Plaintiffs and members of the Class also suffered damages in the form of invasion of privacy, in addition to charges to their cellular telephone plans.

49.     Plaintiff and members of the Class are also entitled to and seek injunctive relief prohibiting Defendants' illegal conduct in the future.

### SECOND CLAIM FOR RELIEF

**(Violations of State Law – California Business and**

**Professions Code § 17200, et seq., for TCPA Violations)**

**(Against All Defendants)**

50.     Plaintiffs re-allege and incorporate by reference all paragraphs of this complaint as if fully set forth herein.

51.     California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*, prohibits any unlawful, unfair, or fraudulent business act or practice.  A business practice need only meet one of these three criteria to be considered unfair competition.

52.     As described herein, Defendants have engaged in unfair and unlawful business practices as the UCL defines by making, or having made on its behalf, calls to cellular telephone numbers using a prerecorded message and/or an ATDS without the prior express consent of the called parties, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

53.     Defendant knew that it used a prerecorded message for calls to the cellular telephone numbers belonging to Plaintiff and the members of the Class.

54.     Defendant violated the UCL's unfair prong and caused substantial injury to consumers by knowingly accessing their cellular telephone equipment without consent, thereby consuming battery life and diminishing their use, enjoyment, and utility of their cellular telephones and cellular telephone plans.  The injuries the Defendants' unfair conduct caused are not outweighed by countervailing benefits to consumers or competition, and the injuries are such that consumers themselves could not have reasonably avoided.

55. Defendants have also violated the UCL's unlawful prong by violating the TCPA, as described herein.

56. Defendants' unlawful and unfair conduct occurred during attempts to induce consumer use of, and participation in, its concierge medicine support services in order to generate revenues for itself, and therefore occurred in the course of Defendants' business practices.

57. Defendants unfair and unlawful conduct directly and proximately based Plaintiff and members of the Class a loss of money or property in the form of the wear and tear on their cellular telephone equipment, consumed battery life, and the diminishment in the use, enjoyment, value, and utility of their cellular telephone plans.

58. Defendants' unfair and unlawful conduct damaged Plaintiff, a physician in California.

59. Pursuant to California Business and Professions Code § 17203, Plaintiff seeks an order (1) requiring Defendant to cease the unfair and unlawful practices described herein; (2) requiring Defendants to restore to Plaintiff and each member of the Class any money acquired by means of unfair and/or unlawful competition (restitution); (3) requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices; and (4)awarding reasonable costs and attorneys' fees pursuant to California Code of Civil Procedure § 1021.5

### THIRD CLAIM FOR RELIEF

**(Violations of State Law – California Business and Professions Code § 17200, et seq., for Violations of CAN-SPAM Act)**

**(Against All Defendants)**

60. Plaintiffs re-allege and incorporate by reference all paragraphs of this complaint as if fully set forth herein.

61. California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*, prohibits any unlawful, unfair, or fraudulent

business act or practice.  A business practice need only meet one of these three criteria to be considered unfair competition.

62.     Defendants have also engaged in unfair and unlawful business practices as the UCL defines by sending emails to the personal email accounts of Plaintiff and Class members without proper opt-out features.

63.     The CAN-SPAM Act (Controlling the Assault of Non-Solicited Pornography and Marketing; 15 U.S.C. § 7701, et seq.) provides protections for users of commercial electronic email.  Senders of commercial emails are not permitted to mislead recipients about the source or content of such mail, and recipients of commercial emails have a right to decline to receive additional commercial emails from the same source.  Thus, the CAN-SPAM Act exists to prevent electronic messages like the ones described within this Complaint, and to protect the privacy of citizens like the Plaintiff and the Class.

64.     The emails Defendants sent to Plaintiff and those similarly situated constitute "commercial electronic mail message" under the CAN-SPAM Act because Defendants' emails had the primary purpose of transmitting a commercial advertisement or promotion of a commercial product or service, namely, Longeviti's concierge services. 15 U.S.C. § 7702(2)(A).

65.     Upon information and belief, some or all of the emails Defendants sent to Plaintiff and the Class failed to comply with the requirements of 15 U.S.C. section 7704(a)(3)(A), to contain a "functioning return electronic mail address or other Internet-based mechanism, clearly and conspicuously displayed, that (i) a recipient may use to submit, in a manner specified in the message, a reply electronic mail message or other form of Internet-based communication requesting not to receive future commercial electronic mail messages from that sender at the electronic mail address where the message was received; and (ii) remains capable of receiving such messages or communications for no less than 30 days after the transmission of the original message."

66.     Insofar as emails Defendants sent to Plaintiff and the Class contained a section 7704(a)(3)(A) compliant opt-out link, upon information and belief Defendants violated 15 U.S.C. section 7704(a)(4), which requires that "If a recipient makes a request … not to receive some or any commercial electronic mail messages from such sender, then it is unlawful:

(i)     for the sender to initiate the transmission to the recipient, more than 10 business days after the receipt of such request, of a commercial electronic mail message that falls within the scope of the request;

(ii)    for any person acting on behalf of the sender to initiate the transmission to the recipient, more than 10 business days after the receipt of such request, of a commercial electronic mail message with actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that such message falls within the scope of the request;

(iii)   for any person acting on behalf of the sender to assist in initiating the transmission to the recipient, through the provision or selection of addresses to which the message will be sent, of a commercial electronic mail message with actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that such message would violate clause (i) or (ii); or

(iv)    for the sender, or any other person who knows that the recipient has made such a request, to sell, lease, exchange, or otherwise transfer or release the electronic mail address of the recipient (including through any transaction or other transfer involving mailing lists bearing the electronic mail address of the recipient) for any purpose other than compliance with this chapter or other provision of law."

67.     Defendants knew that they sent emails to Plaintiff and the members of the Class without compliant opt-out links, or it violated Plaintiff and the Class's wishes to opt out of future emails.

68.     Defendants violated the UCL's unfair prong and caused substantial injury to consumers by knowingly accessing their email without consent, thereby consuming

14

battery life and diminishing their use, enjoyment, and utility of their cellular telephones and computers, as well as cellular telephone plans.  The injuries caused by Defendants' unfair conduct are not outweighed by countervailing benefits to consumers or competition, and the injuries are such that consumers themselves could not have reasonably avoided.

69.    Defendants have also violated the UCL's unlawful prong by violating the CAN-SPAM Act, as described herein.

70.    Defendants' unlawful and unfair conduct occurred during attempts to induce consumer use of, and participation in, its concierge medicine support services in order to generate revenues for itself, and therefore occurred in the course of Defendants' business practices.

71.    Defendants unfair and unlawful conduct directly and proximately based Plaintiff and members of the Class a loss of money or property in the form of the wear and tear on their cellular telephone and computer equipment, consumed battery life, and the diminishment in the use, enjoyment, value, and utility of their cellular telephone plans.

72.    Defendants' unfair and unlawful conduct damaged Plaintiff, a physician in California.

73.    Pursuant to California Business and Professions Code § 17203, Plaintiff seeks an order (1) requiring Defendant to cease the unfair and unlawful practices described herein; (2) requiring Defendants to restore to Plaintiff and each member of the Class any money acquired by means of unfair and/or unlawful competition (restitution); (3) requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices; and (4) awarding reasonable costs and attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

//

//

# FOURTH CLAIM FOR RELIEF

## (Violations of State Law – California Business and Professions Code § 17200, et seq., for Violations of California Public Utilities Code § 2872)

### (Against All Defendants)

74.     Plaintiffs re-allege and incorporate by reference all paragraphs of this complaint as if fully set forth herein.

75.     California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*, prohibits any unlawful, unfair, or fraudulent business act or practice.  A business practice need only meet one of these three criteria to be considered unfair competition.

76.     Defendants have also engaged in unfair and unlawful business practices as the UCL defines by operating an automatic dialing-announcing device to place pre-recorded calls to Plaintiff and the Class, in violation of California's Public Utilities Code § 2872.

77.     An "automatic dialing-announcing device" is defined as any automatic equipment that incorporates: (1) a storage capability of telephone numbers to be called or a random or sequential number generator capable of producing numbers to be called; and (2) the capability, working alone or in conjunction with other equipment, to disseminate a prerecorded message to the telephone number called.

78.     Upon information and belief, the pre-recorded phone calls Plaintiff and the Class received were made using an automatic dialing-announcement device, and none of the exceptions outlined in section 2872 apply to Defendants' calls to Plaintiff and the Class.

79.     Defendants knew that they sent pre-recorded phone calls to Plaintiff and the Class using an automatic dialing-announcement device.

80.     Defendants did not have an established relationship with Plaintiff or the Class prior to transmitting the message, and the calls were not generated at Plaintiff or the Class's request.

81.     Defendant violated the UCL's unfair prong and caused substantial injury to consumers by knowingly accessing their cellular telephones without consent, thereby consuming battery life and diminishing their use, enjoyment, and utility of their cellular telephones, as well as cellular telephone plans.  The injuries caused by Defendants' unfair conduct are not outweighed by countervailing benefits to consumers or competition, and the injuries are such that consumers themselves could not have reasonably avoided.

82.     Defendants have also violated the UCL's unlawful prong by violating California's Public Utilities Code § 2872, as described herein.

83.     Defendants' unlawful and unfair conduct occurred during attempts to induce consumer use of, and participation in, its concierge medicine support services in order to generate revenues for itself, and therefore occurred in the course of Defendants' business practices.

84.     Defendants unfair and unlawful conduct directly and proximately based Plaintiff and members of the Class a loss of money or property in the form of the wear and tear on their cellular telephone and computer equipment, consumed battery life, and the diminishment in the use, enjoyment, value, and utility of their cellular telephone plans.

85.     Defendants' unfair and unlawful conduct damaged Plaintiff, a physician in California.

86.     Pursuant to California Business and Professions Code § 17203, Plaintiff seeks an order (1) requiring Defendant to cease the unfair and unlawful practices described herein; (2) requiring Defendants to restore to Plaintiff and each member of the Class any money acquired by means of unfair and/or unlawful competition (restitution); (3) requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices; and (4) awarding reasonable costs and attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

A.    An order certifying the Class as defined herein, appointing Plaintiff Lawrence May as the representative of the Class, and appointing his counsel as Class Counsel;

B.    An order declaring Defendants' actions, as set out herein, violate the TCPA;

C.    A declaratory judgment that Defendants' telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

D.    Statutory damages of $500 for each negligent violation of the TCPA;

E.    Statutory damages of $10,000 for each knowing or willful violation of the TCPA;

F.    Actual and punitive damages arising from Defendants' wrongful and illegal conduct;

G.    An order declaring that Defendants' actions, as set out herein, violate the UCL;

H.    An order requiring Defendant to cease the unfair and unlawful practices described herein;

I.    An order requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

J.    An order requiring Defendants to pay restitution for the money and property lost as a result of its unlawful telephone calling practices;

K.    An order requiring Defendants to identify any third party involved in the calling activities as set forth herein, as well as the terms of any contract or compensation arrangement it has with such third parties;

L.    A temporary, preliminary, and permanent injunction prohibiting Defendants from calling Plaintiff and Class members using a prerecorded

1    message or through the use of an ATDS or autodialer, without recipients'
2    prior express consent;

3  M.    A temporary, preliminary, and permanent injunction requiring Defendants
4        to cease all unsolicited calls and otherwise protecting the interests of the
5        Class;

6  N.    A temporary, preliminary, and permanent injunction prohibiting
7        Defendants from using, or contracting the use of, an automatic telephone
8        dialing system without obtaining and maintaining records of call
9        recipients' prior express consent to receive calls made with such
10       equipment;

11 O.    A temporary, preliminary, and permanent injunction prohibiting
12       Defendants from conducting any future telemarking activities until it has
13       established an internal Do Not Call List as required by the TCPA;

14 P.    Attorney's fees;

15 Q.    Litigation expenses and costs of the instant suit;

16 R.    Forfeiture penalties of up to $10,000 per violation of the TCPA and
17       referral of any judgment the Court issues in favor of the Plaintiff and/or the
18       Class to the FCC Enforcement Bureau for notice and/or enforcement of the
19       same; and

20 S.    Such other or further relief as the Court deems proper.

21
22 DATED:  March 15, 2021              BROWN WHITE & OSBORN LLP
23
24                             By    s/Kenneth P. White
25                                   _____
                                     THOMAS M. BROWN
26                                   KENNETH P. WHITE
                                     KARINEH TARBINIAN
27                                   Attorneys for LAWRENCE A. MAY,
                                     M.D., individually and on behalf of all
28                                   others similarly situated

## **DEMAND FOR JURY TRIAL**

Plaintiff LAWRENCE A. MAY, M.D. hereby demands a jury trial.

DATED:  March 15, 2021          BROWN WHITE & OSBORN LLP


By    *s/Kenneth P. White*
_____
THOMAS M. BROWN
KENNETH P. WHITE
KARINEH TARBINIAN
Attorneys for LAWRENCE A. MAY,
M.D., individually and on behalf of all
others similarly situated

4812-9528-6489, v. 1

CLASS ACTION COMPLAINT

# EXHIBIT A

| **From:** | Daniel Gladstone CEO <dgladstone@longeviti.health> |
|---|---|
| **Sent:** | Thursday, December 24, 2020 12:08 PM |
| **To:** | Lawrence May |
| **Subject:** | Concierge Medicine w/ Longeviti Health: Make 2021 The Best Year Yet! |



Contact            |         Schedule                  |   Meet

**Dear Dr. May,**

Happy Holidays! I recently called you and left you a message.

As the CEO of Longeviti Health, I'm reaching out to you because you are an established concierge doctor and I believe we can help you.

**Many doctors in this space are being charged tremendous sums of money by their concierge partners for bare-bones service and I'm certain that Longeviti can outperform all of them at a fraction of the price.**

- In terms of success, we are now the fastest growing concierge medicine and practice solutions company in the country.

- In terms of service, we treat our affiliated physicians like family and have a 100% physician satisfaction rate.

- In terms of price, physicians like you who switch to Longeviti pay a long-term rate of **$20,000 per year or just 7.5% of membership revenue** (the lowest published rate in the history of concierge medicine).

What we're offering deserves 30 minutes. Please use this link to schedule a 30 minute meeting with me.  I'll explain exactly how we are different and how **we have helped physicians like you save $50,000.00 per year (or more) while also gaining patients.**

Schedule With Me By Clicking Here

I look forward to our meeting!

Best in Health,

**Daniel Gladstone**

1

## Established concierge physicians who switch to Longeviti **save an average of $50,000 per year** .

**LEARN MORE**

As a family run business, our philosophy is simple.

## Why Physicians Love Us

We believe the physicians we work with should do better year after year and not simply stay with us because of a lack of good options.

The result: Our physician partners are among the happiest physicians around. Come schedule a meeting and see for yourself!

**SCHEDULE A MEETING**

## Our Physicians. Our Family.



### Peter Bruno, MD
New York

*When I initially transitioned my practice, I did so in large part because of Daniel Gladstone's positive (and relentless!) efforts to recruit me. What really won me over, though, has been Longeviti's absolute passion and continued commitment to my success.*



### Sheree Lipkis, MD
Chicago

*While walking through the Chicago Botanic Gardens, our daughter said "while this has been such a difficult year, we've also been blessed in unexpected ways". She named five biggies. Meeting you guys and transitioning my practice were both on her list. Thank you so much!*

# See What Makes Us Different



 

## Address

2645 Executive Park Drive - Weston, Florida 33331

## Website

www.longeviti.health

## Contact

(888) 580-6170

sales@longeviti.health

---

© 2020 Longeviti Health, LLC. All Rights Reserved.

Unsubscribe