Paul A. Grammatico (SBN 246380)
pgrammatico@kcozlaw.com
**KABAT CHAPMAN & OZMER LLP**
333 S. Grand Avenue, Suite 2225
Los Angeles, California 90071
Telephone:    (213) 493-3988
Facsimile:    (404) 400-7333

Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
Benjamin D. Williams (SBN 307073)
bwilliams@kcozlaw.com
**KABAT CHAPMAN & OZMER LLP**
171 17th Street NE, Suite 1550
Atlanta, Georgia 30363
Telephone:    (404) 400-7300
Facsimile:    (404) 400-7333

*Counsel for Defendants Daniel S. Gladstone
and Longeviti Health, LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE A. MAY, M.D., individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DANIEL S. GLADSTONE, an individual, LONGEVITI HEALTH, LLC, a Florida limited liability company, and DOES 1 – 10, inclusive,<br><br>　　　　　Defendants. | Case No. 2:21-cv-02312-DSF-ADS<br><br>Hon. Dale S. Fischer<br><br>**DEFENDANTS DANIEL S. GLADSTONE'S AND LONGEVITI HEALTH LLC'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION AND FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:    December 6, 2021<br>Hearing Time:    1:30 p.m. PST<br>Judge: Hon. Dale S. Fischer |

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on December 6, 2021 at 1:30 p.m. PST, or as soon thereafter as the matter may be heard before the Honorable Judge Dale S. Fischer in Courtroom 7D, First Street Courthouse, 350 West 1st Street, Los Angeles, California, Defendants Longeviti Health LLC and Daniel S. Gladstone will and hereby do move this Court for an order granting Defendants' motion to deny class certification and for sanctions.

Defendants bring this motion because the evidence adduced in this case shows that Plaintiff Lawrence May, M.D., cannot satisfy at least two of Federal Rule of Civil Procedure 23(a)'s mandatory threshold requirements for class certification—including because Dr. May is not an adequate class representative and because his claims are not typical of the class he proposes to represent. Under Ninth Circuit law and Rule 23 itself, the Court should decide the class-certification question now. More discovery will not change the fact that Dr. May cannot meet all of Rule 23(a)'s requirements. After conducting the rigorous analysis Rule 23 requires, the Court should deny class certification.

Defendants also move for sanctions under 28 U.S.C. § 1927 because Plaintiff's lawyers—who were chosen not by Dr. May, but by the CEO and founder (Matthew Jacobson) of Defendants' *competitor* (SignatureMD)—have knowingly or recklessly brought frivolous claims based on false allegations against Defendants. In fact, this entire lawsuit, which has been orchestrated by Defendants' *competitor* and is an extension of a first-filed arbitration against Defendants by that competitor, has been brought to harass Defendants and unfairly multiply proceedings against them to drain their limited resources and force them out of the marketplace. An award of attorneys' fees and costs against Plaintiff's counsel is thus warranted under § 1927. Defendants also ask the Court to enter a written order finding that SignatureMD and Jacobson's conduct in bringing these

1

claims (through Dr. May) is improper. Without an order, nothing will prevent them from recruiting a *different* strawman to perpetuate their anticompetitive litigation.

Defendants bring this motion following the conference of counsel in accordance with L.R. 7-3, which took place by telephone on October 29, 2021, with a follow-up telephone conferences on November 5 and November 8, 2021. Plaintiff's counsel explained *that he was working to possibly identify a new proposed class representative*—a tacit concession that this motion should be granted—but that he opposed this motion.

DATED: November 8, 2021          */s/ Ryan D. Watstein*

Paul A. Grammatico (SBN 246380)
pgrammatico@kcozlaw.com
**KABAT CHAPMAN & OZMER LLP**
333 S. Grand Avenue, Suite 2225
Los Angeles, California 90071
Telephone:   (213) 493-3988
Facsimile:    (404) 400-7333

Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
Benjamin D. Williams (SBN 307073)
bwilliams@kcozlaw.com
**KABAT CHAPMAN & OZMER LLP**
171 17th Street NE, Suite 1550
Atlanta, Georgia 30363
Telephone: (404) 400-7300
Facsimile:   (404) 400-7333

*Counsel for Defendants Daniel S. Gladstone and Longeviti Health, LLC*

2

Defs.' Mot. to Deny Class Certification & For Sanctions
Case No. 2:21-cv-02312-DSF-ADS

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................1

II. BACKGROUND AND RELEVANT FACTS............................................................3

   A.  Procedural History ........................................................................................3

   B.  Relevant Facts ................................................................................................4

      1.  Longeviti and SignatureMD Directly Compete. ......................................4

      2.  SignatureMD and Jacobson Are Behind This Sham Lawsuit...................5

      3.  SignatureMD Has a History of Using Litigation to Inflict Competitive Harm on Longeviti and Gladstone. ..........................................................7

      4.  Dr. May Has No Understanding of His Duties as a Class Representative and Has Suffered No Damages. ..............................................................7

      5.  Dr. May's Dubious Causes of Action. .....................................................8

         (a) TCPA and Related UCL Claims .........................................................8

         (b) UCL and CAN-SPAM .......................................................................9

III.  LEGAL STANDARD ......................................................................................10

IV.  ARGUMENT AND AUTHORITIES ..................................................................11

   A.  Dr. May Is Not an Adequate Class Representative.......................................11

   B.  Dr. May's Claims Are Not Typical of the Alleged Class's Claims...............14

      1.  Dr. May's Ties to SignatureMD Subject Him to Unique Defenses. .......15

      2.  Dr. May Does Not Share the Same Injury as the Class, Which Subjects Him to Further Unique Defenses. ..........................................................16

   C.  Plaintiff's Counsel's Misconduct Warrants Sanctions. ................................20

      1.  Counsel Has Recklessly or Knowingly Filed Frivolous Claims. ............21

      2.  Counsel Pursues These Claims to Harass Defendants.............................23

      3.  The Court's Order Should Forbid Further Gamesmanship. ....................23

V. CONCLUSION ................................................................................................24

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Am. Express Co. v. Italian Colors Rest.*,
5
    570 U.S. 228 (2013) .................................................................. 10

6

*Amchem Prod., Inc. v. Windsor*,
7
    521 U.S. 591 (1997) .................................................................. 13

8

*Borum v. Brentwood Vill., LLC*,
9
    2019 WL 2437686 (D.D.C. June 11, 2019) ....................................... 13

10

*Bunn v. Dash*,
    2021 WL 1234717 (C.D. Cal. Feb. 24, 2021) .................................... 21

11

12

*Byes v. Telecheck Recovery Servs., Inc.*,
    173 F.R.D. 421 (E.D. La. 1997) .................................................. 13

13

*Casillas v. Madison Ave. Assocs.*,
14
    926 F.3d 329 (7th Cir. 2019) ..................................................... 19

15

*Castro v. PPG Indus., Inc.*,
16
    2020 WL 6205704 (C.D. Cal. Aug. 28, 2020) ................................... 10

17

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
18
    973 P.2d 527 (Cal. 1999) ........................................................... 20

19

*Comcast Corp. v. Behrend*,
20
    569 U.S. 27 (2013) .................................................................... 10

21

*Edwards v. Alameda-Contra Costa Transit Dist.*,
    796 F. App'x 461 (9th Cir. 2020) ................................................. 20

22

23

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .............................................. 11, 15, 16

24

25

*Evans v. IAC/Interactive Corp.*,
    244 F.R.D. 568 (C.D. Cal. 2007) ................................................. 13

26

*Gordon v. Virtumundo, Inc.*,
27
    575 F.3d 1040 (9th Cir. 2009) .................................................... 19

28

ii

*Great Dynasty Int'l Fin. Holdings Ltd. v. Haiting Li*,
    2014 WL 3381416 (N.D. Cal. July 10, 2014) ............................................. 21, 22

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ..................................................................... 14, 15

*Haynes v. City & Cty. of San Francisco*,
    688 F.3d 984 (9th Cir. 2012) ............................................................................ 20

*Kamm v. California City Dev. Co.*,
    509 F.2d 205 (9th Cir. 1975) ............................................................................ 11

*Kandel v. Brother Int'l Corp.*,
    264 F.R.D. 630 (C.D. Cal. 2010) (Fischer, J.) ................................................ 17

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ..................................................................... 12

*Koenig v. Benson*,
    117 F.R.D. 330 (E.D.N.Y. 1987) ...................................................................... 12

*Lahiri v. Universal Music & Video Distrib. Corp.*,
    606 F.3d 1216 (9th Cir. 2010) .......................................................................... 20

*Legg v. PTZ Ins. Agency*, *Ltd.*,
    321 F.R.D. 572 (N.D. Ill. 2017) ....................................................................... 19

*McGee v. S-L Snacks Nat'l*,
    982 F.3d 700 (9th Cir. 2020) ............................................................................ 17

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................................ 11

*Palmer v. Stassinos*,
    236 F.R.D. 460 (N.D. Cal. 2006) ..................................................................... 18

*In re Quarterdeck Off. Sys.*, *Inc. Sec. Litig.*,
    1993 WL 623310 (C.D. Cal. Sept. 30, 1993) ................................................... 15

*Spokeo*, *Inc. v. Robins*,
    578 U.S. 330 (2016) .......................................................................................... 16

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ....................................................................... 11, 14

iii

*Stephens v. Nordstrom, Inc.,*
    2018 WL 7143623 (C.D. Cal. Dec. 26, 2018) (Fischer, J.) ............................... 13

*Stromberg v. Qualcomm Inc.,*
    14 F.4th 1059 (9th Cir. 2021) ............................................................... 10

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ................................................................... 16, 18

*Van Patten v. Vertical Fitness Grp., LLC,*
    847 F.3d 1037 (9th Cir. 2017) ................................................................ 18

*Vinole v. Countrywide Home Loans, Inc.,*
    571 F.3d 935 (9th Cir. 2009) ................................................................. 11

*Vysata v. Menowitz,*
    2019 WL 7842539 (C.D. Cal. July 12, 2019) .................................................. 20

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ......................................................................... 10

*Welling v. Alexy,*
    155 F.R.D. 654 (N.D. Cal. 1994) ............................................................. 11

*Williams v. Warner Music Grp. Corp.,*
    2020 WL 1270331 (C.D. Cal. Feb. 27, 2020) ............................................... 16, 18

**Statutes**

28 U.S.C. § 1927 ......................................................................... 3, 20, 22

47 U.S.C. § 227 ................................................................................. 3

Cal. Pub. Utilities Code § 2872 ................................................................ 8

**Rules**

Fed. R. Civ. P. 23 ........................................................................ *passim*

## I.   INTRODUCTION

In September 2021, Defendants took named Plaintiff Dr. Lawrence May's deposition in this case.  What they learned was staggering: Dr. May is a strawman plaintiff in a frivolous lawsuit orchestrated and helmed by one of Defendants' primary competitors, SignatureMD, and its founder and CEO, Matt Jacobson. SignatureMD and Jacobson are themselves *precluded* by an arbitration agreement from suing Defendants in federal court, and in fact, they are *already* pursuing claims against Defendants in a first-filed arbitration.  Nevertheless, to keep bludgeoning their fledgling competitor with litigation expenses hoping to drive it out of business, SignatureMD and Jacobson recruited Dr. May—a SignatureMD executive—to file this lawsuit against Longeviti.  For good measure, they also caused Dr. May to bring frivolous claims based on demonstrably false allegations against Longeviti's young CEO in his personal capacity.  SignatureMD and Jacobson are now clandestinely managing this litigation from the shadows, using Dr. May as a proxy.

Indeed, as Dr. May revealed at his deposition: (1) it was Jacobson's idea, not his, to sue Longeviti and Gladstone; (2) Dr. May never would have sued had Jacobson not solicited him to; (3) it was Jacobson, not Dr. May, who hand-picked and appointed Dr. May's attorneys—*with no input from him*; (4) SignatureMD or Jacobson, not Dr. May, is presumably funding this litigation and paying the attorneys; (5) the allegations in Dr. May's complaint (prepared at the direction of SignatureMD and Jacobson) are false; and (6) Dr. May has no valid claims against Defendants.

Through this subterfuge, Dr. May, who admits he has suffered no economic damages (a statutory requirement for most of his claims) or cognizable harm (a requirement under Article III), seeks to represent a nationwide class of physicians who allegedly received marketing calls and emails from Defendants.  Dr. May, though, is not bringing valid claims to vindicate his or the putative class's rights.

Instead, SignatureMD and Jacobson are using Dr. May as a pawn to perpetuate a bogus lawsuit that is materially duplicative of the claims they are *already pursuing* in the first-filed arbitration. Jacobson and SignatureMD's aim is to wreak financial havoc on Defendants, as they have been doing through a series of lawsuits for several years, and to either deter them from competing with SignatureMD, or worse yet, force them out of business so they *cannot* compete.

Defendants are understandably outraged by SignatureMD's, Jacobson's, and their counsel's misuse of the litigation machinery, and the Court should be too. Given everything Defendants have gleaned through Dr. May's testimony, they ask the Court to end this charade by denying class certification and imposing sanctions.

*First*, Dr. May is not an adequate class representative because he had no intention of suing Defendants until SignatureMD—*an organization that pays him to advance its interests*—and Jacobson solicited him to do so and appointed lawyers to represent him. Far from pursuing the putative (and non-existent) class's interests, Dr. May is acting as a proxy for SignatureMD to stifle competition by advancing frivolous claims against SignatureMD's competitor (Defendants), creating an obvious, irreconcilable conflict of interest that precludes him from serving as a class representative. Further, Dr. May conceded that he does not understand his responsibilities as a class representative and was not harmed by Defendants' alleged conduct, claiming instead that his damages are "whatever" his attorneys assert on his behalf. Dr. May's testimony establishes not only that he is an inadequate class representative, but that he, SignatureMD, and Jacobson are making a mockery of the same unfair competition laws on which most of May's claims are based. The Court should deny certification on that basis alone.

*Second*, Dr. May's claims and defenses are not typical of the purported class he seeks to represent. He is subject to unique arguments and defenses worlds apart from those Defendants would assert against the alleged class. At the threshold, Dr. May's leadership position with SignatureMD, a company that competes with

Defendants and pays Dr. May, combined with SignatureMD's and Jacobson's orchestration and apparent funding of this lawsuit, will create unique defenses as to Dr. May that the alleged class does not share. Similarly, Dr. May's claims are atypical (and he is an inadequate representative) given his admission that he has suffered no economic damages or other cognizable harm, which in turn deprives him of both Article III standing for all his claims and statutory standing for his UCL claims. Dr. May is also subject to other substantive defenses that differentiate his claims from those of the class. For example, he admits that email he received from Defendants contained a mechanism to unsubscribe from further communications, and that he *never* exercised that option—two facts that destroy his UCL claim based on a supposed CAN-SPAM Act violation, rendering that claim atypical of the class's claims.

And while Dr. May seeks to represent a class of supposedly harmed individuals, Defendants did nothing unlawful here, and so there is no actual class that Dr. May could possibly represent—even if he *could* satisfy adequacy and typicality. In short, the record establishes that the proposed, but non-existent class cannot be certified because Dr. May cannot meet his burden to establish adequacy and typicality. The Court should thus deny class certification.

Finally, to deter any further abuse of the judicial process, the Court should find that SignatureMD's and Jacobson's conduct is improper and sanction Dr. May's counsel under 28 U.S.C. § 1927 for: (1) knowingly or recklessly filing frivolous claims; and (2) using this lawsuit as pretext for harassing Defendants.

## II.   BACKGROUND AND RELEVANT FACTS

### A.   Procedural History

Dr. May brought this lawsuit last March, alleging four causes of action, including one for purported violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA), and three for alleged violations of the UCL. (*See* Compl. ¶¶ 42–86, ECF No. 1.) The thrust of Dr. May's allegations is that

Defendants called and emailed to solicit him to learn more about the concierge medical services Longeviti provides.  (*Id.* ¶¶ 22–25.)  Based on these allegations, Dr. May hopes to represent a broadly defined nationwide (though non-existent) class including:

> All past, current, and potential physicians, domiciled within the United States, who received a nonemergency call from Defendants on their cellular telephone, without their prior express consent, either via an automatic telephone dialing system ("ATDS") or as a prerecorded message, and/or received an email to their private email address, that references and advertises Longeviti's concierge support services.

(*Id.* ¶¶ 33 & 33.a.)

Defendants each answered the complaint, denying Dr. May's allegations and his assertion that his case warrants class-action status.  (*See* Defs.' Answers, ECF Nos. 10, 15.)  The Court entered a scheduling order (ECF No. 31), which sets July 12, 2022 as the fact discovery cutoff deadline and February 15, 2022 as Dr. May's class-certification deadline (ECF No. 30, at 2, 4).

**B.    Relevant Facts**

**1.    Longeviti and SignatureMD Directly Compete.**

Defendant Daniel Gladstone founded Defendant Longeviti Health LLC in December 2017.   (Gladstone Decl. ¶ 3.)   Longeviti connects physicians with patients to deliver high-quality, end-to-end personalized medical care through a care delivery model that allows physicians to spend far more time with patients than in typical health care systems.  (*Id.* ¶ 4.)  Longeviti is a relatively new entrant in the market for concierge medical services and is working to build its business.  (*Id.* ¶ 5.)  Longeviti and SignatureMD directly compete in the concierge medical services market.  (*Id.*; *see also* Compl. ¶ 2.)

SignatureMD offers similar services: it delivers "membership-based concierge medicine support service to concierge physicians," and "connects patient

1  members with physicians" like Dr. May.  (Compl. ¶¶ 14–15.)  According to
2  SignatureMD's website, CEO Matt Jacobson founded the company in 2006, and it
3  is now "one of the largest personalized care membership programs in the nation
4  with a rapidly growing network of over 200 affiliated physicians across 35 states."[1]
5  Gladstone formerly worked for SignatureMD but left the company in 2014.
6  (Gladstone Decl. ¶ 6; Compl. ¶ 14.)

7  ## 2.  SignatureMD and Jacobson Are Behind This Sham Lawsuit.

8  Although his complaint does *not* mention it, Dr. May serves as the chairman
9  of SignatureMD's medical advisory board, a leadership position within
10  SignatureMD.  (L. May Dep. Tr., attached as **Exhibit A** to Williams Decl., at
11  17:11–17; 29:23–30:2–8.)  Dr. May has held that position for approximately four
12  years.  (*Id.*, 17:14–21; 29:20–22.)  As chairman, Dr. May provides advice to
13  SignatureMD, investigates opportunities for the company, and helps recruit new
14  physicians.  (*Id.*, 30:9–31:16.)  For providing these services, SignatureMD pays
15  Dr. May a $5,000-per-month stipend.  (*Id.*, 31:22–32:3.)

16  Along with his chairman role, Dr. May is also a participating physician for
17  SignatureMD, which means he provides concierge medical services to patients
18  through SignatureMD's concierge support services.  (*See id.*, 17:22–18:3;
19  Compl. ¶ 15.)  SignatureMD helps "recruit and establish the core group of
20  patients" that Dr. May treats, and the company also oversees the billing for those
21  patients.  SignatureMD bills the patients directly and then pays Dr. May.  (May Tr.,
22  18:7–16.)

23  Dr. May revealed in his deposition that it was SignatureMD's founder and
24  CEO's (*i.e.*, Jacobson's) idea, not his, both to file this suit against Longeviti and
25  Gladstone and to have Dr. May serve as lead plaintiff.  (*Id.*, 15:5–7 & 17:4–17; *see*

26
27  [1] https://signaturemd.com/concierge-healthcare-about-us/meet-the-signaturemd-executive-team/ (last visited Nov. 8, 2021).
28

*also id.*, 28:22–29:16; 33:24–34:11; 36:18–37:2.)    Dr. May never sought legal counsel on his own (*id.*, 32:16–21), and he had never heard of the TCPA until Jacobson asked him to be the lead plaintiff and explained what the TCPA is (*id.*, 18:17–19:3; 20:2–6).  He had never heard of the CAN-SPAM Act or the UCL until he was given a draft of the complaint to review.  (*Id.*, 19:4–19.)

Dr. May had no independent understanding that he might have any legal claims against Defendants until Jacobsen told him he (supposedly) did.  (*Id.*, 26:23–27:11.)  It was Jacobson, not Dr. May, who found and selected the lawyers to sue Defendants (*id.*, 38:6–9; 39:11–21), and Jacobson gave Dr. May *no say* in appointing those lawyers (*id.*, 39:23–24).  Dr. May is not paying those lawyers but believes SignatureMD is.  (*Id.*, 39:25–40:16.)  And while Dr. May has his own personal attorney (*id.*, 38:23–39:9), he did not speak to that attorney before filing his complaint and instead uses the attorneys Jacobson chose for him (*id.*, 39:3–40:16).  In Dr. May's words, the lawyers in this case "[were] presented to [him], not selected by [him]."  (*Id.*, 39:14–21.)  Crucially, *Dr. May never would have sued Gladstone or Longeviti if Jacobson hadn't asked him to*.  (*Id.*, 33:3–5.)

SignatureMD and Jacobson's clandestine participation did not end with merely orchestrating the lawsuit, asking Dr. May to pursue claims he had no intention of pursuing, or choosing May's lawyers for him.  Deposition testimony also shows that SignatureMD or Jacobson has produced documents on *Dr. May's* behalf, and that at least some of those documents were never in Dr. May's possession, custody, or control.  (*See* May Tr., 96:17–97:21.)  Instead, they were documents SignatureMD or Jacobson apparently maintained, but then produced to Defendants through Dr. May's lawyers, with a Bates stamp bearing Dr. May's name.  (*See id.*)[2]  In other words, even though SignatureMD and Jacobson are not

---

[2] Defendants have not yet pursued non-party discovery from SignatureMD or Jacobson given the expense of doing so.  (*See* Williams Decl. ¶ 6.)

1  parties, they continue to act behind the scenes, apparently working directly with
2  the lawyers they chose for Dr. May, to produce potential evidence in this case.
3  (*Id.*; *see also* 98:1–7; 98:8–99:13.)

4      **3. SignatureMD Has a History of Using Litigation to Inflict Compet-**
5          **itive Harm on Longeviti and Gladstone.**

6          In the spring of 2018, SignatureMD (the real party-in-interest) sued
7  Longeviti and Gladstone in California state court, alleging certain claims like those
8  Dr. May advances here—including, for example, a claim for unfair competition.
9  (Gladstone Decl. ¶ 7 & SignatureMD's Compl., attached as **Ex. 1**.)  That lawsuit
10  was dismissed by stipulation in October 2018.  (Gladstone Decl. ¶ 7 & Stip. to
11  Dismiss, attached as **Ex. 2.**)  Then, in January 2021, just over two months before
12  SignatureMD caused Dr. May to file the present lawsuit, SignatureMD brought a
13  JAMS arbitration proceeding against Longeviti and Gladstone, in which
14  SignatureMD makes virtually all of the same allegations as the ones Dr. May
15  brings here—including, for example, that Defendants purportedly misused
16  SignatureMD's information to unfairly compete and to make robocalls to
17  prospective customers.  (*See* Gladstone Decl. ¶ 8 & SignatureMD's Arb. Demand,
18  attached as **Ex. 3**, under seal.)  SignatureMD brought the arbitration under an
19  arbitration agreement Defendants and SignatureMD entered into as part of a
20  settlement agreement that resolved the earlier litigation.  (Gladstone Decl. ¶ 8 &
21  Arb. Agreement, attached as **Ex. 4**, under seal.)  In the earlier-filed arbitration, the
22  parties have already chosen an arbitrator, and discovery is well underway.
23  (Gladstone Decl. ¶ 9.)    SignatureMD's and Jacobson's litigation conduct is
24  draining Defendants' resources by forcing them to defend themselves against
25  overlapping, frivolous claims on more than one front.  (*Id.* ¶ 10.)

26      **4. Dr. May Does Not Understand His Duties as a Class Representa-**
27          **tive and Has Suffered No Damages.**

28      Dr. May acknowledges that he has done little to understand his claims or his

7

1    responsibilities as a class representative.  For example, he has no understanding of

2    what conduct or actions the TCPA, the CAN-SPAM Act, or the UCL proscribe.

3    (May Tr., 48:2–15.)  He has no understanding of what a class representative is or

4    does.  (*Id.*, 44:2–6.)  He has no concept of what is required to have standing to sue

5    for the claims he brings.  (*Id.*, 48:17–49:5.)  He has "no recollection" of ever

6    searching for any documents responsive to Defendants' discovery requests.  (*Id.*,

7    105:17–106:20.)[3]  And he has no understanding about what damages he's seeking

8    or what his lawyers are claiming his damages supposedly are.  (*Id.*, 93:2–24; *see

9    also id.*, 89:3–9.)

10    ### 5.  Dr. May's Dubious Causes of Action.

11    ### (a)    TCPA and Related UCL Claims

12    Dr. May grounds his whole case on email and phone calls he claims he

13    received from Defendants.  He brings a TCPA claim (and related claims under the

14    UCL, including a UCL claim for purported violation of Cal. Pub. Utilities

15    Code § 2872) for phone calls he says he received from Defendants.  (*See generally*

16    May Tr., 70:6–72:25.)  Although Dr. May asserts in his complaint that "multiple

17    calls" were made to him with a prerecorded message that were part of "a robo-

18    calling effort using auto-dial technology" (Compl. ¶¶ 22, 23, 26), his testimony

19    does not back that up.  For example, he can recall only one phone call from

20    Defendants, not multiple.  (*See* May Tr. 69:6–13) (noting "there might have been"

21    another call, but acknowledging he did not "have a specific recollection of the

22    second").[4]  He cannot remember for certain whether there was a live person on the

23

24    ---

[3] The only logical conclusion to be gleaned from this striking admission is that

25    Dr. May's document productions are, at least to some degree, coming straight from

26    SignatureMD or Jacobson directly to Dr. May's attorneys, who then produce them

27    to Defendants as though they are documents Dr. May maintained.  (*See generally
id.*, 97:14–21.)

28    [4] *See also id.*, 60:15–21 ("Q. And you're only aware of one call.  Correct? … The
(*cont'd on next page*)

other end of the line, or whether he listened to a prerecorded message.  (*Id.*, 55:12–56:17; 79:2–22.)  He did not have any independent information on the background of the one call he can remember and instead relied on Jacobson to "ascertain" that information for him.  (*See id.*, 77:17–78:25.)

Further, contrary to his allegations in the complaint (Compl. ¶ 20), Dr. May testified that Gladstone likely acquired his cellphone number from a business card *he gave Gladstone* when they lunched together.  (May Tr., 86:5–17; 87:3–12.)  He confirmed that he was not charged extra money for receiving any call from Defendants because his phone plan allows unlimited calls, (*see id.*, 59:9–22; 88:17–20), and he could articulate no economic damages flowing from any call from Defendants (*id.*, 89:11–22; 90:10–24).  He likewise testified that the use, enjoyment, value, or utility of his cellphone was not diminished.  (*Id.*, 90:10–91:7.)  As Dr. May confirmed in his deposition: "I'm not harmed by a call."  (*Id.*, 89:3–9).

### (b)   UCL and CAN-SPAM

Dr. May also brings a CAN-SPAM Act claim through the UCL based on email he says he received from Longeviti, advertising Longeviti's concierge services.  (*See* May Tr., 81:8–82:5.)  Dr. May never clicked the "unsubscribe" link, even though he acknowledges the "unsubscribe" option was available to him.  (*See id.*, 82:14–19; 83:7–21; 84:4–9; 84:4–8.)[5]  And he does not know whether anyone else received the same emails, or even if so, whether any of those individuals, unlike him, used the "unsubscribe" link.  (*Id.*, 85:24–86:4.)

On these facts, Dr. May's proposed class action is not certifiable, and sanctions are warranted.

---

answer is, that's the only one that I recall.  In my hazy memory, there may have been another call but I don't have any specific recollection.").

[5] Dr. May testified that he "could not contend" there was no "unsubscribe" link because "there was [in fact] an opportunity to unsubscribe."  (May Tr., 85:4–8.)

### III.    LEGAL STANDARD

Rule 23 places a heavy burden on plaintiffs.  Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  To police this limited exception, Rule 23 imposes "stringent requirements" for certification.  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).  "Rule 23 does not set forth a mere pleading standard"; instead, a "party seeking class certification must affirmatively demonstrate his compliance with the Rule.…"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Certification is appropriate only if "the trial court is satisfied, after a rigorous analysis," that Rule 23's requirements are met.  *Id.* at 350–51.  Dr. May shoulders the burden to prove, by a preponderance of the evidence, that Rule 23's stringent requirements are fulfilled.  *See id.* at 351; *Castro v. PPG Indus., Inc.*, No. 20-cv-2110, 2020 WL 6205704, at *2 (C.D. Cal. Aug. 28, 2020) (citations omitted).  This includes proving, as "a threshold matter," that all "four requirements of Rule 23(a) [are satisfied]: (1) numerosity,    (2) commonality,    (3) typicality,    and    (4) adequacy    of representation."  *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1066 (9th Cir. 2021) (citation omitted).[6]  Because the "merits of the class members' substantive claims are often highly relevant when determining whether to certify a class.…, a district court *must* consider the merits if they overlap with the Rule 23(a) requirements."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citations omitted).

---

[6] Along with the Rule 23(a) requirements, a party seeking certification must meet other requirements too, including by satisfying the criteria of at least one of the categories under Rule 23(b).  *Id.*  Because Dr. May's testimony reveals that he cannot satisfy at least two of Rule 23(a)'s threshold requirements, Defendants do not address his failure to meet, for example, the predominance and superiority requirements of Rule 23(b).  Defendants preserve and do not waive those arguments.

"At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Thus, a "defendant may move to deny class certification before a plaintiff files a motion to certify a class." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941 (9th Cir. 2009). Defendants need not wait to move on certification until discovery closes. *Id.* at 942, 944. "Where the necessary factual issues [to the certification question] may be resolved without discovery, it is not required." *Kamm v. California City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975) (affirming denial of certification despite plaintiffs' assertion that they needed more discovery).

## IV.    ARGUMENT AND AUTHORITIES

Given the evidence adduced during Dr. May's deposition, he cannot satisfy Rule 23(a)'s adequacy or typicality requirements. No amount of additional discovery will change that, and the Court should deny certification now, and impose sanctions, to prevent the SignatureMD parties and their counsel from furthering their anticompetitive goals by abusing both Rule 23 and the Court's processes.

## A.    Dr. May Is Not an Adequate Class Representative.

"Rule 23(a)(4) permits the certification of a class action only if the representative parties will fairly and adequately protect the interests of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (cleaned up; citations omitted). Class representatives are adequate only where they have no conflicts of interest with the other class members and where they and their counsel will prosecute the action vigorously on the class's behalf. *Id.*; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). When a representative cedes control of the lawsuit to his lawyers or others, that representative is not adequate. *Welling v. Alexy*, 155 F.R.D. 654, 657, 659 (N.D. Cal. 1994) (finding representative did not pass adequacy test in part because of his "demonstrated level of disinterest in [the]

11

1  lawsuit"); *see also Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 525

2  (C.D. Cal. 2012) ("Individuals are not adequate representatives of a class when it

3  appears that they have abdicated any role in the case beyond that of furnishing

4  their names as plaintiffs."); *Koenig v. Benson*, 117 F.R.D. 330, 337 (E.D.N.Y.

5  1987) (finding class representative inadequate for, among other reasons, his

6  inability to exercise independent control over his attorney).

7      Dr. May's deposition testimony confirms he is an inadequate class

8  representative. *First*, he has abdicated his duties as a class representative by

9  ceding control of the litigation to: (1) SignatureMD and Jacobson, who

10  orchestrated and are still involved in (if not outright controlling) this lawsuit; and

11  (2) to the lawyers Jacobson chose for Dr. May. For example, Dr. May confirmed

12  he never would have sued Defendants had Jacobson not solicited him to pursue

13  claims that SignatureMD could not pursue on its own, which exposes Dr. May, not

14  as a true class representative, but as a pawn in an abusive, anticompetitive

15  litigation scheme. (*See* May Tr., 33:3–5; *see generally id.*, 15:5–7 & 17:4–17;

16  28:22–29:16; 33:25–34:11; 36:18–37:2.) Jacobson selected Dr. May's lawyers for

17  him (with no input from May) and, to Dr. May's belief, is footing the legal bill for

18  this lawsuit. (May Tr., 32:16–21; 38:6–9; 39:11–21; 39:23–40:16.) And

19  SignatureMD has produced documents in this case (in response to discovery

20  requests directed at *Dr. May*) that were not known to Dr. May or in his possession,

21  custody, or control. (*See id.*, 96:17–97:21.) Dr. May thus has merely lent his name

22  to the lawsuit but otherwise handed complete control over to SignatureMD,

23  Jacobson, and the attorneys Jacobson chose for this lawsuit.

24      *Second*, because Dr. May is chairman of SignatureMD's medical advisory

25  board and is paid to advance that company's interests, he has a direct,

26  irreconcilable conflict with the absent (non-existent) class members. His

27  involvement in this suit is not fueled by his own legitimate desire to vindicate his

28  or anyone else's rights. Instead, he agreed to sue Defendants because Jacobson

12

asked him to and because of his chairmanship position, in which he is responsible for advancing SignatureMD's competitive interests. (*See* May Tr., 16:22–17:13.) Indeed, because of that leadership role with SignatureMD, Dr. May is naturally beholden to the company, and given Jacobson's and SignatureMD's other proceedings against Defendants, their obvious goal is to financially harm Gladstone and his smaller, fledgling company and to drive them out of the marketplace. Because of these conflicts of interest between Dr. May and the putative class, he fails the adequacy test. *See generally Amchem Prod.*, *Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (the adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent").

*Third*, Dr. May has no understanding of what his responsibilities are as a class representative, (May Tr., 44:2–6), which also renders him an inadequate representative. *See*, *e.g.*, *Byes v. Telecheck Recovery Servs.*, *Inc.*, 173 F.R.D. 421, 428 (E.D. La. 1997) (class representative inadequate in part because she was "admittedly unaware that she has duties as a class representative"); *see also Borum v. Brentwood Vill.*, *LLC*, No. 16-cv-1723, 2019 WL 2437686, at *8 (D.D.C. June 11, 2019) (courts should be "troubled if the proposed representative lacks any understanding of [her] role in class litigation").

*Fourth*, Dr. May's deposition testimony contradicts certain of the factual allegations he made in his complaint, which is not only "certainly troubling," but which also suggests a lack of credibility that may jeopardize the interests of the absent putative class members. *See Stephens v. Nordstrom*, *Inc.*, No. 17-cv-5872, 2018 WL 7143623, at *5 (C.D. Cal. Dec. 26, 2018) (Fischer, J.); *see also Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 578 (C.D. Cal. 2007) (in evaluating adequacy, noting that contradictions between plaintiffs' declarations and deposition testimony were "certainly troubling"). For example, even though his complaint alleges that Defendants' emails did not have an appropriate opt-out mechanism (Compl. ¶¶ 65–66), Dr. May testified that he never tried to unsubscribe from future

13

1   emails from Defendants, even though "there was [in fact] an opportunity to

2   unsubscribe" on the face of the emails (May Tr., 82:14–19; 83:7–21; 84:4–9; 85:4–

3   8).  And even though Dr. May's complaint says that at "no point" did he give

4   Defendants his cell phone number (Compl. ¶ 20), Dr. May testified that, in reality,

5   Gladstone likely acquired that number from a business card *Dr. May gave*

6   *Gladstone* when the two lunched together.  (May Tr., 86:5–17; 87:3–12.)  Dr. May

7   made these two inaccurate allegations in his complaint, even though he ostensibly

8   reviewed it before it was filed.  (*Id.* 19:4–12.)  These discrepancies call Dr. May's

9   credibility into question, which in turn weighs against a finding of adequacy.

10      In sum, Dr. May cannot fulfil Rule 23(a)(4)'s adequacy requirement, and his

11  proposed class thus cannot be certified.  Nor could any other class representative

12  procured by SignatureMD ever be adequate, for all the same reasons.

13  **B.    Dr. May's Claims Are Not Typical of the Alleged Class's Claims.**

14      "The purpose of [Rule 23(a)'s] typicality requirement is to assure that the

15  interest of the named representative aligns with the interests of the class."  *Hanon*

16  *v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted).[7]  The

17  test for typicality asks whether other class members have "the same or similar

18  injury, whether the action is based on conduct [that] is not unique to the named

19  plaintiffs, and whether other class members have been injured by the same course

20  of conduct."  *Id.*  Class certification is not appropriate "where a putative class

21  representative is subject to unique defenses [that] threaten to become the focus of

22  the litigation."  *Id.* (collecting cases).  The Ninth Circuit has held that certification

23  should be denied "if there is a danger that absent class members will suffer if their

24  representative is preoccupied with defenses unique to it."  *Id.* (quote and citation

25

26  _____

    [7] The "commonality and typicality requirements of Rule 23(a) tend to merge," and

27  thus many of Defendants' arguments about Dr. May's unsuitability to serve as class

    representative apply to both adequacy and typicality.  *Staton*, 327 F.3d at 957.

28

1 omitted); *accord Ellis*, 657 F.3d at 974 (vacating typicality ruling "because the
2 district court failed to consider the effect that defenses unique to the named
3 Plaintiffs' claims have on that question"); *see also In re Quarterdeck Off. Sys.*, *Inc.*
4 *Sec. Litig.*, No. 92-cv-3970, 1993 WL 623310, at *5 (C.D. Cal. Sept. 30, 1993)
5 ("[P]laintiffs' background and experience make their claims atypical and support"
6 denial of class certification).

7 **1. Dr. May's Ties to SignatureMD Subject Him to Unique Defenses.**

8 Dr. May's "unique background and factual situation require him to prepare
9 to meet defenses that are not typical of the defenses" Defendants might raise
10 against putative class members. *Hanon*, 976 F.2d at 508. For example, unlike any
11 other alleged class member, Dr. May holds a leadership position with SignatureMD
12 (the real party in interest here because it and its CEO are masterminding this
13 lawsuit behind the scenes). (*See* May Tr. 17:11–17; 29:23–30:2; 30:5–8.; *see also*
14 *id.*, 15:5–7 & 17:4–17; 28:22–29:16; 33:25–34:11; 36:18–37:2.) As Dr. May
15 himself testified, he never would have brought this litigation had it not been for
16 Jacobson asking him to do so. (*Id.*, 33:3–5.) And Dr. May serves as chairman for
17 (and is paid by) a company that not only directly competes with Defendants, but
18 that is also litigating against them in a materially duplicative arbitration
19 proceeding—in what amounts to a clear-cut, multi-front effort to eliminate
20 competition by picking off a smaller competitor with limited resources.
21 (*See* Gladstone Decl. ¶¶ 7–10.)

22 And while Dr. May strategically did not disclose his chairmanship position
23 in his complaint, no other putative class member would likely have such close ties
24 to SignatureMD or Jacobson. These circumstances set Dr. May apart from the
25 (non-existent) class and subject him to unique defenses the other class members
26 will not share. In litigating these factual realities unique to Dr. May, the case will
27 center on Dr. May's motivations, or lack thereof, for pursuing this action, the
28 motivations of his backers, and related issues that will distract from the merits of

his claims and the interests of the (non-existent) putative class.  Thus, "there is a danger [and indeed, *a real possibility*] that the majority of the proposed class members will suffer because [Dr. May] will be engrossed with disputing [Defendants'] arguments regarding [Dr. May's] individual case."  *Williams v. Warner Music Grp. Corp.*, No. 2:18-cv-09691, 2020 WL 1270331, at *4 (C.D. Cal. Feb. 27, 2020), *aff'd*, 848 F. App'x 284 (9th Cir. 2021) (finding no typicality).[8]

### 2. Dr. May Does Not Share the Same Injury as the Class, Which Subjects Him to Further Unique Defenses.

Dr. May has also confirmed that he has suffered no economic damages or harm from any of Defendants' conduct.  He thus does not share the same or similar alleged injuries as those of the (non-existent) class.  *First*, Dr. May lacks standing to bring his claims.[9]  To have Article III standing, a plaintiff must have suffered a concrete harm; that a defendant violated a statute is not enough to confer standing on its own.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205–07 (2021) (even when defendant has violated the law, plaintiffs lack standing to sue for that violation unless they "suffered any physical, monetary, or cognizable intangible harm"); *Spokeo*, *Inc. v. Robins*, 578 U.S. 330, 341 (2016) (A "bare procedural violation, divorced from any concrete harm," does not "satisfy the injury-in-fact requirement of Article III").  And for Dr. May's UCL claims in particular, <u>statutory</u> standing is "substantially *narrower* than federal standing under Article III" and "specifically require[s] *economic injury. . . .*"  *McGee v. S-L Snacks Nat'l*,

---

[8] Other putative class members would also suffer from many of the same deficiencies if SignatureMD procures those individuals for this lawsuit.  Because Defendants did nothing wrong here, no one else would sue them except someone that SignatureMD recruited—which explains why no one else has.

[9] It is appropriate to evaluate the merits of Dr. May's claims now because "a district court *must* consider the merits if they overlap with the Rule 23(a) requirements."  *Ellis*, 657 F.3d at 981 (citations omitted).

---

982 F.3d 700, 705 n.3 (9th Cir. 2020) (quoting *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 886 (Cal. 2011)) (emphasis added) (cleaned up); *see generally Kandel v. Brother Int'l Corp.*, 264 F.R.D. 630, 633 (C.D. Cal. 2010) (Fischer, J.) (finding no typicality where "the named Plaintiffs may not even have standing to raise their own [statutory] claims and could certainly not represent the class in" an action under that statute).

Under these tenets, Dr. May lacks both statutory and Article III standing, which subjects him to a substantive defense the other putative class members likely will not share. As to his UCL-based claims specifically, Dr. May admits he has not suffered the economic injury required to vest him with statutory standing. (*See*, *e.g.*, May Tr., 59:9–22; 88:17–20; 89:11–22; 90:10–91:7; 92:11–19.) He testified that he was not charged for, or harmed by, Defendants' calls. (*See* May Tr., 88:17–89:9) ("I'm not harmed by a call.") He agreed that the calls did not affect the use, enjoyment, value, or utility of his cellphone. (*Id.*, 90:10–91:7.) And he similarly testified that he likely has no economic or other damages arising out of his CAN-SPAM-based UCL claim for any email he received from Defendants.[10] (*See generally id.*, 92:11–19.) And when asked at his deposition what damages he seeks through this lawsuit, Dr. May could offer no answer to that straightforward question, defaulting instead to "[w]hatever [his] attorneys argue." (*Id.*, 92:21–93:10.) Put another way, SignatureMD's hand-picked attorneys will decide what damages Dr. May seeks because he knows of none. Dr. May has thus admitted he has no economic injury or other cognizable harm from any of

---

[10] Nor could he, because the emails were sent to *save* Dr. May money by switching to a lower-cost concierge medical provider—*i.e.*, Longeviti. SignatureMD and Jacobson might well be frustrated that Defendants offer physicians a better product for a cheaper price, thereby reducing the millions in profits Jacobsen makes. But wielding baseless litigation to ruin a competitor is of course *not* a lawful competitive response.

1  Defendants' alleged conduct, which means he lacks standing for any of his UCL

2  claims.[11]

3         Dr. May also lacks standing to pursue his TCPA claim.  Although the Ninth

4  Circuit has held that unsolicited marketing calls are a *de facto* injury under the

5  TCPA, *see Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir.

6  2017), a more recent U.S. Supreme Court ruling undermines *Van Patten* and

7  affirms that plaintiffs must still establish a concrete injury even in the context of an

8  alleged statutory violation, *TransUnion*, 141 S. Ct. at 2205–07.[12]  "'Article III

9  grants federal courts the power to redress harms that defendants cause plaintiffs,

10 not a freewheeling power to hold defendants accountable for legal infractions.'"

11 *Id.* at 2205 (quoting *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 332 (7th Cir.

12 2019)).  Because Dr. May admitted that he was "not harmed by a call," (May Tr.,

13 89:3–9), he has no concrete injury and thus no standing on his TCPA claim.

14        Dr. May likewise testified that he cannot remember for certain whether

15 Defendants' calls to him used a prerecorded message (May Tr., 55:12–56:17; 79:2–

16 22), and he does not know whether Defendants' phone system employed an

17 automatic telephone dialing system, (*see* May Tr., 73:14–76:8).  These telling

18 admissions, coupled with his acknowledgment that he was not harmed by

19 Defendants' calls, subject Dr. May to the unique defense that his *own* testimony

20

21 [11] And with no damages, Dr. May cannot pursue claims on behalf of class members

22 who allegedly *did* suffer damages (though no such persons exist).  *See*, *e.g.*,

23 *Williams*, 2020 WL 1270331, at *4 (plaintiffs' "apparent lack of actual damages"

   precluded finding of typicality); *see also Palmer v. Stassinos*, 236 F.R.D. 460, 463

24 n.1 (N.D. Cal. 2006) (plaintiffs' "lack of actual damages makes them atypical

25 members of the classes as proposed, which would have included persons who

26 suffered actual damages").

27 [12] The Court "cannot treat an injury as 'concrete' for Article III purposes based on-

28 ly on Congress's say-so."  *Id.* at 2205 (quote and citation omitted).

has eviscerated his alleged TCPA claim.  *See Casillas*, 926 F.3d at 332 (Barrett, J.) ("Because Madison's violation of the statute did not harm [plaintiff], there is no injury for a federal court to redress.").  That claim is thus atypical of the alleged (but non-existent) class's.

Even if he had been harmed by the phone calls (he was not), that harm would not be traceable to Defendants' conduct for one simple reason: Dr. May gave his business card to Gladstone, with his cell phone number on it, at a lunch the two of them had together, *before* the complained-of calls.  (May Tr., 86:5–17; 87:3–12.)   That subjects Dr. May to the additional unique defense that he manifested a consent to be contacted.  *See Legg v. PTZ Ins. Agency*, *Ltd.*, 321 F.R.D. 572, 577 (N.D. Ill. 2017) ("[I]f [a class member] has expressly agreed and expected to receive calls from defendant, and did receive those calls, [that class member] has not been injured in any way, even if defendants technically violated a procedural requirement of the TCPA.").  Even if the consent were obtained in a procedurally deficient way, that "does not make the calls unsolicited. If the class members agreed to receive the calls, they lack a genuine controversy." *Id.* (quote and citation omitted).  Because he gave his business card and contact information to Gladstone, Dr. May will be subject to the unique defense that he consented to the calls and therefore, as he admits (*see* May Tr., 88:17–89:9), has suffered no real injury traceable to Defendants' conduct.  His TCPA claim is therefore not typical of the proposed (non-existent) class's.

*Second*, his UCL claim based on the purported CAN-SPAM Act violation is similarly atypical.  The CAN-SPAM Act (15 U.S.C. § 7701, *et seq.*) does *not* "ban [unsolicited marketing emails] outright, but" imposes certain requirements, including that unsolicited email must include "either a functioning return e-mail address or a comparable mechanism that allows a recipient to 'opt out' of future mailings."  *Gordon v. Virtumundo*, *Inc.*, 575 F.3d 1040, 1047–48 (9th Cir. 2009) (citing 15 U.S.C. § 7704(a)).   Directly contradicting his complaint's own

19

1  allegations (Compl. ¶¶ 65–66), Dr. May testified that he never tried to unsubscribe
2  from future emails from Defendants, even though they provided an "unsubscribe"
3  mechanism.  (May Tr., 82:14–19; 83:7–21; 84:4–9; 84:4–8.)  With that admission,
4  there has been no CAN-SPAM Act violation, and in turn, Dr. May has no UCL
5  claim based on an alleged underlying violation of CAN-SPAM.  *See Cel-*
6  *Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal.
7  1999).

8       In sum, Dr. May's testimony confirms that his ties to SignatureMD set him
9  apart from other class members, and his factual circumstances and lack of concrete
10 injury subject him to unique defenses—including that he lacks standing to bring
11 his claims—that other alleged class members will not face.  He thus does not
12 satisfy Rule 23(a) typicality, and his proposed class should not be certified.

13 **C.   Plaintiff's Counsel's Misconduct Warrants Sanctions.**

14      "28 U.S.C. § 1927 provides that an attorney 'who so multiplies the
15 proceedings in any case unreasonably and vexatiously may be required by the
16 court to satisfy personally the excess costs, expenses, and attorneys' fees
17 reasonably incurred because of such conduct.'"  *Lahiri v. Universal Music & Video*
18 *Distrib. Corp.*, 606 F.3d 1216, 1218 n.1 (9th Cir. 2010) (quoting
19 28 U.S.C. § 1927).  District courts enjoy wide discretion in determining whether to
20 impose sanctions and in what amount.  *See Haynes v. City & Cty. of San Francisco*,
21 688 F.3d 984, 987 (9th Cir. 2012).

22      Section 1927 "sanctions are appropriate 'when an attorney knowingly or
23 recklessly raises a frivolous argument, or argues a meritorious claim for the
24 purpose of harassing an opponent.'"  *Vysata v. Menowitz*, No. 18-cv-06157,
25 2019 WL 7842539, at *10 (C.D. Cal. July 12, 2019) (quoting *In re Keegan Mgmt.*
26 *Co., Sec. Lit.*, 78 F.3d 431, 436 (9th Cir. 1996)); *see also Lahiri*, 606 F.3d at 1219
27 (an attorney's recklessness can be sanctionable under section 1927);
28 *Edwards v. Alameda-Contra Costa Transit Dist.*, 796 F. App'x 461, 462

20

(9th Cir. 2020) ("The imposition of any sanction under 28 U.S.C. § 1927 must be accompanied by a finding that the sanctioned attorney acted recklessly or in bad faith or committed intentional misconduct.") (cleaned up; citation omitted). Recklessness and frivolousness can be show by an attorney's failure to, for example, "make a reasonable and competent inquiry into the law" and the facts to determine whether clients have standing to pursue the claims ultimately pleaded in the complaint and whether those claims are well-founded. *Great Dynasty Int'l Fin. Holdings Ltd. v. Haiting Li*, No. 13-cv-1734, 2014 WL 3381416, at *7–8 (N.D. Cal. July 10, 2014) (finding attorneys acted recklessly in filing frivolous claims "without a basis in fact or in law"); *see Bunn v. Dash*, No. 20-cv-7389, 2021 WL 1234717, at *2 (C.D. Cal. Feb. 24, 2021) (an allegation is brought recklessly or in bad faith when it is objectively untrue).

Here, Dr. May's attorneys (handpicked by Jacobson) have both knowingly and recklessly raised frivolous claims to harass a smaller, fledgling competitor—claims they know the real parties in interest are foreclosed from pursuing in court by an arbitration provision and that those parties are *already pursing* in a first-filed arbitration.[13]  Defendants should thus be awarded their attorneys' fees and costs in defending themselves in this duplicative, bad-faith lawsuit.

### 1.  Counsel Has Recklessly or Knowingly Filed Frivolous Claims.

Dr. May's attorneys included salacious, damaging allegations that Dr. May has either confirmed are false or that are based on pure speculation untethered to Dr. May's own personal knowledge.  For example, Dr. May's lawyers allege that Gladstone misappropriated Dr. May's contact information from SignatureMD and used that information to call Dr. May.  (Compl. ¶ 18, 20.)  Indeed, Dr. May's

---

[13] The claims and allegations here are duplicative of those that SignatureMD is already pursuing against Defendants in the first-filed arbitration.  (*See* Gladstone Decl. ¶ 8 & **Ex. 3**, under seal.)

complaint alleges that Dr. May never supplied his cellphone number to Defendants. (*Id.* ¶ 20.)  But had Dr. May's lawyers bothered to check with him or undertake a reasonable and competent inquiry into the facts *before* filing this action, they would have learned, contrary to the complaint's false and frivolous allegations (*id.* ¶ 20), that Dr. May in fact *did* previously give his cellphone number to Gladstone when the two met for lunch in Calabasas.  (*See* May Tr., 61:6–17; 64:6–20; 65:24–67:9; 87:3–12).  The lawyers also would have discovered that emails to Dr. May indeed had an "unsubscribe" link but that Dr. May never used it—and that he therefore had no UCL claim based on a purported violation of the CAN-SPAM Act.  (*See* May Tr., 82:14–19; 83:7–21; 84:4–9; 84:4–8.)  And had they conducted the required reasonable inquiry, the lawyers would have discovered that Dr. May has suffered no economic damages or other harm, which in turn means he lacks standing to bring *any* of his claims.  (*See* May Tr., 59:9–22; 88:17–20; 89:3–22; 90:10–92:7.)   Rather than undertake the serious, reasonable inquiry into the background and facts before filing false allegations and bogus claims, the lawyers here—in concert with SignatureMD and Jacobson—merely recycled many of the same allegations SignatureMD is already pursuing in the first-filed arbitration. They have thus unfairly multiplied the proceedings against Defendants by recklessly (at best) or knowingly (at worst) filing salacious, false, and frivolous claims "without a basis in fact or in law."  *Great Dynasty*, 2014 WL 3381416, at *7–8.  Section 1927 sanctions are therefore appropriate.  Without those sanctions, SignatureMD, Jacobson, and their counsel will have accomplished their purpose: bleeding Defendants of substantial monies through frivolous, anticompetitive litigation they cannot pursue themselves.  (*See generally* Gladstone Decl. **Ex. 4**.)[14]

---

[14] Exhibit 4 is filed under seal and is the settlement agreement showing the arbitration provision between SignatureMD (the real party in interest here) and Defendants.

## 2.  Counsel Pursues These Claims to Harass Defendants.

Dr. May's testimony leads to one conclusion: his lawyers are pressing this lawsuit, at Jacobson's direction, to harass Defendants and deter them from competing with SignatureMD.  Dr. May acknowledged that he brought his suit because Jacobson asked him to.  (May Tr., 16:22–17:13; 33:3–5.)  Jacobson chose Dr. May's attorneys with no input from Dr. May.  (*Id.*, 39:14–21.)  And Dr. May is not paying his attorneys but believes SignatureMD is.  (*Id.*, 32:16–21; 38:6–9; 39:11–21; 39:23–40:16.)  Jacobson, SignatureMD, and their counsel have therefore engineered this lawsuit, and are puppeteering it from behind the curtain, to harass a smaller competitor and deplete its limited resources by forcing it to defend itself against strikingly similar claims across separate fronts.  Indeed, even after Dr. May's deposition—where he admitted away all his claims—Plaintiff's counsel nevertheless recently served abusive, harassing *classwide* discovery for claims May doesn't even have.  (*See* Williams Decl. ¶ 4.)  For example, Dr. May served document requests seeking all documents related to any attempt by a physician to unsubscribe from emails (even though Dr. May testified he never tried to unsubscribe himself), and all documents related to *any* calls made to physicians to advertise Longeviti's services—even though there is nothing illegal about making a call to advertise services.  (*See id.*)  He also seeks the identity of all physicians Longeviti emailed or called from December 2016 to present.  (*Id.*)  This classwide discovery is entirely inappropriate, given Dr. May's deposition testimony and given its irrelevance to the claims now at issue.  But that hasn't stopped his lawyers from pursuing that abusive discovery anyway.  There is thus no serious question that Plaintiff's claims, and this litigation, are being wielded like a cudgel to harass Defendants.

## 3.  The Court's Order Should Forbid Further Gamesmanship.

Given Dr. May's deposition admissions, Defendants have claims against SignatureMD and Jacobson for (at least) unfair competition under the UCL and for

abuse of process.  But as a fledgling company, Defendants' resources are limited, and they cannot afford to litigate those claims now.  Defendants therefore ask the Court to include in its ruling on this motion a finding that SignatureMD and Jacobson's conduct is improper.   Otherwise, they will continue to abuse the litigation machinery to manufacture frivolous claims against Defendants, without consequence.  Case-in-point: When conferring under Local Rule 7-3, Plaintiff's counsel suggested that he was working to identify a new class representative for the case.  (Williams Decl. ¶ 5.)  That revelation shows that, after Dr. May's deposition, even his own lawyers understand that he has no claims and cannot serve as class representative (though that didn't stop them from later serving classwide discovery).   It also reveals that SignatureMD and Jacobson plan to continue their anticompetitive behavior by pressing this vexatious, groundless litigation, despite Dr. May's damning testimony—and even though any other class representative SignatureMD or Jacobson might recruit will face some of the same problems with adequacy and typicality that Dr. May faces.  The Court should not countenance the SignatureMD parties' and their lawyers' conduct and, in its written order on this motion, should hold that SignatureMD's, Jacobson's, and their counsel's conduct is improper.  That is, unfortunately, the only way to put a stop to that conduct once and for all.

## V.   CONCLUSION

The Court should grant Defendants' motion to deny class certification, should impose sanctions on Plaintiff's counsel, and should include in its written order a finding that SignatureMD's and Jacobson's conduct is improper.

*[Signature on Next Page]*

1   DATED:  November 8, 2021            */s/ Ryan D. Watstein*

2                                        Paul A. Grammatico (SBN 246380)
                                         pgrammatico@kcozlaw.com
3                                        **KABAT CHAPMAN & OZMER LLP**
4                                        333 S. Grand Avenue, Suite 2225
                                         Los Angeles, California 90071
5                                        Telephone:   (213) 493-3988
6                                        Facsimile:    (404) 400-7333

7                                        Ryan D. Watstein (*pro hac vice*)
8                                        rwatstein@kcozlaw.com
                                         Benjamin D. Williams (SBN 307073)
9                                        bwilliams@kcozlaw.com
10                                       **KABAT CHAPMAN & OZMER LLP**
11                                       171 17th Street NE, Suite 1550
                                         Atlanta, Georgia 30363
12                                       Telephone:   (404) 400-7300
                                         Facsimile:    (404) 400-7333
13
14                                       *Counsel for Defendants Daniel S. Glad-
                                         stone and Longeviti Health, LLC*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' MOT. TO DENY CLASS CERTIFICATION & FOR SANCTIONS
CASE NO. 2:21-CV-02312-DSF-ADS

# PROOF OF SERVICE

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

I am employed in Atlanta, Georgia; I am over the age of 18 and not a party to the within action; my business address is 171 17th Street NE, Suite 1550, Atlanta, GA, 30363.

On November 8, 2021, I served the above documents **DEFENDANTS DANIEL S. GLADSTONE'S AND LONGEVITI HEALTH LLC'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION AND FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties to this action by taking the action listed below at the following addresses: SEE ATTACHED LIST

☐ **(BY MAIL)** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Atlanta, Georgia. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☒ **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

Executed on November 8, 2021, in Atlanta, GA.

/s/ *Ryan D. Watstein*
Ryan D. Watstein

**SERVICE LIST**

Thomas M. Brown
Kenneth P. White
Karineh Tarbinian
BROWN, WHITE & OSBORN LLP
333 South Hope Street, 40th Floor
Los Angeles, California 90071-1406
tbrown@brownwhitelaw.com
kwhite@brownwhitelaw.com
ktarbinian@brownwhitelaw.com

*Counsel for Plaintiff*

PROOF OF SERVICE
CASE NO. 2:21-CV-02312-DSF-ADS